UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JESSICA COSTA;

        Plaintiff,

    v.

NATIONAL ACTION FINANCIAL
SERVICES, and ELIZABETH DOE;

        Defendants.

NO. CIV. S-05-2084 FCD/KJM

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter comes before the court on (1) plaintiff Jessica Costa's ("plaintiff") motion for partial summary judgment relating to her claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq.*, and the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.* and (2) defendant National Action Financial Services, Inc.'s ("defendant" or "NAFS") cross-motion for partial summary judgment with respect to plaintiff's claim for emotional distress damages pursuant to the FDCPA and RFDCPA.  Plaintiff opposes defendant's motion,[1] and

---

[1]    In her opposition, plaintiff moves to strike defendant's cross-motion in its entirety based on defendant's failure to timely serve a statement of undisputed facts as
(continued...)

defendant opposes plaintiff's motion.  For the reasons set forth

below,[2] both plaintiff's and defendant's motions are GRANTED.

BACKGROUND[3]

Sometime before March 17, 2005, plaintiff incurred a debt to

NextCard.  (Pl.'s Verified Complaint for Damages, filed October

15, 2005 ["Compl."], ¶ 18).  Plaintiff defaulted on this debt.

(Id. ¶ 20).  The debt was subsequently assigned to defendant for

collection.  (Id. ¶ 21).  On March 17, 2005, plaintiff received a

voice mail message at her home.  The message stated:  "This

message is for Jessica Costa.  My name is Elizabeth.  I received

a phone call in my office for you.  If you could please contact

me back I'll be here until 4 p.m. Eastern Time.  My number is

866-529-1899 extension 2936."  (Def.'s Response to Pl.'s

Statement of Undisputed Facts, filed Nov. 30, 2007 ("DUF"), ¶ 7).

---

[1](...continued)
required by Eastern District Local Rule 56-260(a). Defendant did
untimely file said statement on November 29, 2007 (Docket # 33).
However, the court DENIES plaintiff's motion to strike because
plaintiff was not unduly prejudiced by the late filing; plaintiff
timely filed a complete and adequate response to defendant's
statement of undisputed facts in conjunction with her opposition
papers filed November 30, 2007 (Docket #34).  Moreover, the sole
evidence relied upon by defendant in its motion is plaintiff's
deposition testimony--testimony which plaintiff is obviously well
aware.

[2]     Because oral argument will not be of material
assistance, the court orders these matters submitted on the
briefs.  E.D. Cal. L.R. 78-230(h).

[3]     Unless otherwise noted, the facts herein are
undisputed.  (Pl.'s Response to Def.'s Assumed Statement of
Undisputed Facts, filed Nov. 30, 2007 ["SUF"]).  Where the facts
are in dispute, the court recounts plaintiff's version of the
facts.  (Pl.'s Statement of Disputed Facts, filed Nov. 30, 2007
["SDF"]).  Although, for the reasons set forth below, any such
disputes do not preclude entry of partial summary judgment.

In response to the message, the next day plaintiff telephoned the number left by Elizabeth. (SUF ¶ 3). Plaintiff did not reach Elizabeth, and left a voice mail. (Id.). The same day Elizabeth left a second message on plaintiff's home phone. (Id. ¶ 4, 5). Upon receiving the second message, plaintiff telephoned Elizabeth back using her cell phone. (Id. ¶ 7). Plaintiff reached an operator and was connected to a woman who answered the telephone by calling herself Elizabeth. (Id. ¶¶ 7, 8). Elizabeth informed plaintiff she was calling in regards to the debt owed on plaintiff's NextCard account. (Id. ¶ 8). Plaintiff explained she was not presently employed and requested a payment schedule. (Id. ¶ 9). Elizabeth told plaintiff setting up payments would be considered a refusal to pay the debt. (Id. ¶ 10). Elizabeth then asked plaintiff how she was paying her other bills, including a $400/month car payment, and whether plaintiff was obtaining money illegally. (Id. ¶¶ 13, 15). Elizabeth then suggested plaintiff should file for bankruptcy. (Id. ¶ 14). Elizabeth subsequently hung up on plaintiff. (Id. ¶ 17).

Plaintiff immediately called NAFS and reached Elizabeth through the operator. (Id. ¶ 18). Plaintiff informed Elizabeth she could not talk to plaintiff "that way," and requested to speak with Elizabeth's supervisor. (Id. ¶ 19). Elizabeth told plaintiff she could not speak with a supervisor until she got a job. (Id. ¶ 20). Elizabeth then hung up on plaintiff. (Id.). Plaintiff called Elizabeth back. (Id. ¶ 21). Elizabeth answered the phone and immediately yelled "you sure did get a job fast." (Id. ¶ 22, 32). Plaintiff requested to speak to Elizabeth's

3

supervisor, and Elizabeth hung up the phone.  (<u>Id.</u> ¶ 23).

Plaintiff again called Elizabeth back.  (<u>Id.</u> ¶ 24).  Plaintiff

reiterated her request to speak with Elizabeth's supervisor.

(<u>Id.</u> ¶ 26).  Elizabeth then suggested plaintiff "pick up a pen,

preferably blue or black.  Go down to McDonalds and fill out an

application." (<u>Id.</u> ¶ 28).  Elizabeth then hung up on plaintiff

yet again.  (<u>Id.</u> ¶ 31).

During all four conversations, Elizabeth never identified

the company she worked for.  (SDF ¶ 2).  Plaintiff returned home

and requested a friend call back in order to discern the company

collecting on her account.  (SUF ¶ 34).  Plaintiff's friend, Mr.

Baucom, called defendant from his personal cell phone.  (<u>Id.</u> ¶

35)  Upon reaching an operator, Baucom asked for the name of the

company.  (<u>Id.</u>).  Baucom was then asked for his phone number,

which he refused to give.  (<u>Id.</u> ¶ 36, 37).  The operator informed

Baucom the company had caller ID and that there was no account

listed for Baucom's phone number.  (<u>Id.</u> ¶ 38).  The operator then

hung up without providing the company name.  (<u>Id.</u>).  Several

minutes later, Baucom called defendant from plaintiff's home

phone.  (<u>Id.</u> ¶ 39).  He requested the name of the company and was

told he had called NAFS.  (<u>Id.</u> ¶ 40, 41).

Approximately a week later, plaintiff received another voice

mail message from Elizabeth at her home.  (SDF ¶ 1).  Plaintiff

also received a letter from defendant regarding her NextCard

account, dated April 7, 2005.  (SUF ¶ 44, 45).

During plaintiff's phone conversations with Elizabeth, and

for approximately a half hour after, plaintiff shook due to

stress caused by the phone calls.  (SDF ¶ 5).  Plaintiff claims

1  she still shakes in response to phone calls by unknown numbers

2  and she refuses to answer the phone. (SUF ¶ 48). Plaintiff's

3  heart races and her palms get sweaty when she does not know the

4  caller. (Id.). Plaintiff claims she also suffers difficulties

5  sleeping two to three times per week. (Id. ¶ 49). Plaintiff has

6  not seen any type of medical doctor or mental health professional

7  for help treating her symptoms. (Id. ¶ 53). Plaintiff has not

8  taken any type of prescription or over-the-counter medication to

9  help treat her symptoms. (Id. ¶ 54).

10                              **STANDARD**

11      A motion for partial summary judgment is resolved under the

12  same standard as a motion for summary judgment. See California

13  v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). Summary judgment

14  is appropriate when it is demonstrated that there exists no

15  genuine issue as to any material fact, and that the moving party

16  is entitled to judgment as a matter of law. Fed. R. Civ. P.

17  56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

18          Under summary judgment practice, the moving party
19          always bears the initial responsibility of informing
            the district court of the basis of its motion, and
            identifying those portions of "the pleadings,
20          depositions, answers to interrogatories, and admissions
            on file together with the affidavits, if any," which it
21          believes demonstrate the absence of a genuine issue of
            material fact.
22

23  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the

24  nonmoving party will bear the burden of proof at trial on a

25  dispositive issue, a summary judgment motion may properly be made

26  in reliance solely on the 'pleadings, depositions, answers to

27  interrogatories, and admissions on file.'" Id. at 324. Indeed,

28  summary judgment should be entered against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Id. at 251-52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 289.  In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with

6

1   the affidavits, if any.  Rule 56(c); <u>SEC v. Seaboard Corp.</u>, 677

2   F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing

3   party is to be believed, and all reasonable inferences that may

4   be drawn from the facts placed before the court must be drawn in

5   favor of the opposing party.  <u>Anderson</u>, 477 U.S. at 255.

6   Nevertheless, inferences are not drawn out of the air, and it is

7   the opposing party's obligation to produce a factual predicate

8   from which the inference may be drawn.  <u>Richards v. Nielsen</u>

9   <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

10  <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

11                            **ANALYSIS**

12  **A.   FDCPA**

13       Plaintiff argues defendant violated 15 U.S.C § 1692d(6) and

14  15 U.S.C § 1692e(11) in failing to provide meaningful disclosure

15  of defendant's identity in voice mail messages left on

16  plaintiff's home phone.  (Pl.'s Mot. Partial Summary Judgment,

17  filed Oct. 4, 2007 ("Pl.'s Mot."), at 2).  Defendant contends

18  Elizabeth's failure to disclose the identity of NAFS was not a

19  violation of § 1962d(6), and that the messages left for plaintiff

20  were not a "communication" as defined by § 1692e(11) and thus,

21  not actionable under the statute.  (Def.'s Mot. Partial Summary

22  Judgment, filed Nov. 30, 2007 ("Def.'s Mot."), at 5, 8-9).

23       Congress enacted the FDCPA in 1977 to eliminate abusive debt

24  collection practices, to insure that debt collectors who refrain

25  from using abusive debt collection practices are not

26  competitively disadvantaged, and to promote consistent state

27  action to protect consumers against debt collection abuses.  15

28  U.S.C. § 1692e; <u>see also</u> <u>Wade v. Regional Credit Association</u>, 87

F.3d 1098, 1099 (9th Cir. 1996) (discussing purpose of the FDCPA).  As such, the statute is liberally construed to protect the "least sophisticated debtor."  <u>Clark v. Capital Credit & Collection Services, Inc.</u>, 460 F.3d 1162, 1171 (9th Cir. 2006); <u>see</u> <u>also</u> <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318-19 (2d Cir. 1993).  This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous."  <u>Clomon</u>, 988 F.2d at 1318-19.

**1.   Section 1692d(6)**

Defendant contends the messages left by its agent disclosed the caller (Elizabeth) and were in no way "harassing, oppressive, or abusive."  Therefore, the messages did not violate § 1692d(6). Moreover, if the caller were required to identify herself as a debt collector, § 1692d(6) would be inconsistent with 15 U.S.C. § 1692c(b) which prohibits debt collectors from communicating with third parties.[4]

Section 1692d(6) states, in relevant part, that:

> A debt collector may not engage in any conduct the
> natural consequence of which is to harass, oppress or
> abuse any person in connection with the collection of a
> debt.  Without limiting the general application of the
> foregoing, the following conduct is a violation of this
> section: . . .(6) . . . the placement of telephone
> calls without *meaningful disclosure* of the caller's
> identity.  (Emphasis added.)

---

[4]    Defendant also attempts to argue that the messages were left in order to "locate the debtor" and therefore should not be subject to the disclosure requirements of § 1692d(6).  (Def.'s Opp'n at 5, 6).  However, defendant cites no case law in support of this proposition, and absent such, the court is not persuaded by defendant's passing argument.

While various district courts have assigned different definitions to the term "meaningful disclosure,"[5] the United States District Court for the Central District of California, in Hosseinzadeh, recently provided a succinct and comprehensive definition, which this court finds persuasive considering factual similarities between this case and Hosseinzadeh.  In Hosseinzadeh, the court defined "meaningful disclosure" as "requir[ing] that the caller [s]tate his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call."  Hosseinzadeh v. M.R.S. Assocs., Inc., 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005).

In Hosseinzadeh, the plaintiff received several pre-recorded messages[6] on her home phone.  Id. at 1008.  The company representative stated: "This message is for Ashraf.  Asharf my name is Clarence Davis.  I have some very important information to discuss with you in reference to a file that has been forwarded to my office that involves you personally.  Contact my office right away at 877-647-5945, extension 3618."  Id. Applying the "meaningful disclosure" standard, the court found that the messages left for the plaintiff did not satisfy the requirements of § 1692d(6).  Id. at 1112.  The court held that "defendant violated § 1692d(6) when its employees failed to disclose defendant's identity and the nature of defendant's

---

[5]    Neither the Ninth Circuit or any other circuit court has ruled on this issue.

[6]    The United States District Court for the Northern District of California has noted that § 1692d(6) applies equally to calls made by an automated service and those calls made by a live person.  See Joseph v. J.J. MacIntyre Companies, L.L.C., 281 F. Supp. 2d 1156, 1163 (N.D. Cal. 2003).

*business* in the messages left on plaintiff's answering machine."

Id. (emphasis added).

The messages left for plaintiff in the present case are strikingly similar to those left in Hosseizadeh.  In both instances, the caller failed to disclose he or she was calling on behalf of a collection agency.  (DUF ¶ 7); Hosseizadeh, 387 F. Supp. 2d at 1180.  Similarly, the caller failed to divulge the true nature and purpose of the call--that is, to collect a debt owed by each of the plaintiffs.  (DUF ¶ 7); Hosseizadeh, 387 F. Supp. 2d at 1180.  As such, applying Hosseizadeh to the facts here, defendant necessarily violated § 1692d(6) when Elizabeth failed to disclose her identity as a debt collector and the nature of the call when she left the messages on plaintiff's voice mail.[7]  See accord Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643 (S.D.N.Y. 2006) (holding collector's identification of itself by name in pre-recorded message did not satisfy FDCPA's requirement that it disclose that the communication is from a debt collector); Knoll v. Allied Interstate, Inc., 502 F. Supp. 2d 943 (D. Minn. 2007) (finding the debtor stated a claim under the FDCPA section requiring meaningful disclosure of a caller's identity where the debt collector had a practice of transmitting the false name "Jennifer Smith" via a caller identification device to consumers to lure them into answering the phone or returning the collector's

---

[7]     The FDCPA and the RFDCPA are "strict liability" statutes.  See Clark v. Capital Credit & Collections Servs., 460 F.3d 1162 (9th Cir. 2006).

10

1  calls).

2      Defendant argues, in rebuttal, that the court should not

3  follow this line of cases, as the type of "full" disclosure on a

4  voice mail message, required by <u>Hosseizadeh</u>, may leave defendant

5  open to liability under other sections of the statute,

6  specifically § 1692c(b).  Defendant's argument is unpersuasive.

7  In the present case, defendant left messages on plaintiff's *home*

8  phone.  <u>Compare</u> <u>Horkey v. J.V.D.B. & Associates, Inc.</u>, 333 F.3d

9  759 (7th Cir. 2003) (upholding statutory damages under § 1692d

10 for collection agency's phone calls to plaintiff at her place of

11 employment).  Plaintiff lived alone at the time and has testified

12 no one else unintentionally heard the messages left by Elizabeth.

13 (Ex. B to Def. Mot., Costa Depo. at 76:19-24).  "[T]he

14 legislatures' concern in enacting these provisions about privacy

15 violations resulting from deliberate disclosure of the debtor's

16 status to third parties such as the debtor's employer has far

17 less applicability to phone calls made to the debtor's phone

18 number at his or her residence for similar reasons." <u>Joseph v.</u>

19 <u>J.J. MacIntyre Companies, L.L.C</u>, 281 F.Supp. 2d 1156, 1164 (N.D.

20 Cal. 2003).  Therefore, while defendant's argument may carry

21 weight in certain circumstances, under the undisputed facts here,

22 its argument is simply inapplicable.

23     **2.   Section 1692e(11)**

24     Plaintiff argues the plain language of § 1692e(11) makes

25 clear defendant was required to disclose that the messages were

26 from a debt collector attempting to collect a debt owed by

27 plaintiff.  Defendant argues the messages left by Elizabeth for

28 plaintiff were not "communications" as defined by § 1692a(2) and

11

1  thus did not fall within the meaning of § 1692e(11).

2      Section 1692a(2) defines "communications" as "the conveying

3  of information regarding a debt *directly or indirectly* to any

4  person through *any medium*." 15 U.S.C. § 1692a(2) (emphasis

5  added). As such, it is clear the messages left by defendant on

6  plaintiff's answering machine constitute "communications" within

7  the meaning of § 1692a(2). Although the messages do not mention

8  specific information about plaintiff's debt or the nature of the

9  call, § 1692a(2) applies to information conveyed "directly or

10 *indirectly*." Hosseinzadeh, 387 F. Supp. 2d at 1116. Here,

11 defendant's messages conveyed information to plaintiff, including

12 the fact that there was a matter that she should attend to and

13 instructions on how to do so. Id. Therefore, the messages left

14 by defendant are "communications," subjecting defendant to the

15 provisions of § 1692e.

16     Section 1692e prohibits a debt collector from using any

17 "false, deceptive, or misleading representation or means in

18 connection with the collection of any debt." Section 1692e sets

19 forth a non-exclusive list of conduct that constitutes a

20 violation of Section 1692e. Section 1692e(11) states:

21         (11) The failure to disclose . . . in [the] *initial
           oral communication that the debt collector is*
22         *attempting to collect a debt* and that any information
           obtained will be used for that purpose, and the failure
23         to disclose in subsequent communications that the
           communication is from a debt collector, except that
24         this paragraph shall not apply to a formal pleading
           made in connection with a legal action. (Emphasis
25         added).

26     In the present case, it is undisputed the messages left on

27 plaintiff's voice mail did not disclose the caller's identity

28 (beyond stating her name as Elizabeth) or the nature of the call.

(DUF ¶ 7).  Thus, defendant violated § 1692e(11) because the
messages left for plaintiff did not convey the required
information.  <u>See Hosseinzadeh</u>, 387 F. Supp. 2d at 1116; <u>see also</u>
<u>Foti v. NCO Financial Systems, Inc.</u>, 424 F. Supp. 2d 643, 669
(S.D.N.Y. 2006) (finding that "NCO Financial Systems" was
insufficient to satisfy disclosure requirement of § 1692e(11)
when the message left for the plaintiff contained "no other
suggestion or clue that the correspondence [was] from a debt
collector").  Namely, Elizabeth, the caller, failed to state her
messages were from a debt collector and in regards to the debt
owed on plaintiff's NextCard account.  <u>Foti</u>, 424 F. Supp. 2d at
669 ("[I]t appears defendant's messages are "communications"
subjecting defendant to the provisions of § 1692e(11), it also
appears that the defendant has violated § 1692e(11) because the
messages do not convey the information required by § 1692e(11),
in particular, that the messages were from a debt collector").

        The court notes, however, that this policy is not well
served in instances in which a plaintiff returns the call of a
debt collector *knowing* she is calling a collection agency.  <u>See</u>
<u>Briggs v. Credit Collections, Inc.</u>, 2007 WL 4034997 at *3 (W.D.
Okla. Nov. 15, 2007).  Although the purpose of the FDCPA requires
"a liberal construction of § 1692e(11) so as to protect the least
sophisticated consumer, the purpose does not require patently
unnecessary identification in subsequent communications when
there are facts to suggest. . . that the consumer placed the call
knowing who [she] was calling and understanding that [she] was
speaking with a debt collector regarding debt collection."  <u>Id.</u>
Requiring a debt collector to interrupt the conversation to

13

interject she was a debt collector would likely be "a pointless formality." Id. (citing Dikeman v. National Educators, Inc., 81 F.3d 949, 954 (10th Cir. 1996)). Therefore, the court finds that the requirement of § 1692e(11) does not apply to the subsequent calls plaintiff made to defendant after Elizabeth disclosed during the initial *phone* conversation that the calls were in regards to collection on plaintiff's NextCard account.

In summary, the court GRANTS plaintiff's motion for partial summary judgment with respect to violations under §§ 1692d(6) and 1692e(11) of the FDCPA. In light of the factors enumerated in 15 U.S.C. § 1692k(b)(1), plaintiff is awarded statutory damages in the amount of $1,000.00.

**B.    RFDCPA**

Plaintiff argues violations of the FDCPA also constitute violations of California's RFDCPA. Therefore, plaintiff asserts defendant necessarily violated the RFDCPA when it violated the FDCPA. Defendant contends it did not violate the FDCPA and therefore did not violate the RFDCPA.

In order to promote consistent state action, the RFDCPA incorporates the majority of the FDCPA in California Civil Code § 1788.17. Section 1788.17 states:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

Therefore, claims asserted under the FDCPA constitute violations of the RFDCPA. Cal. Civil Code § 1788.17. Accordingly, a plaintiff who recovers under the FDCPA is entitled to damages

14

1  under the corresponding section of the RFDCPA.  Cal. Civil Code §

2  1788.30(a).  Such recovery is not, as alleged by defendant,

3  improper "double recovery."  <u>See</u> Cal. Civ. Code § 1788.32

4  ("remedies provided herein are intended to be cumulative . . .

5  ."); <u>Adams v. CIR Law Offices, LLP</u>, 2007 WL 2481550 (S.D. Cal.

6  Aug. 29, 2007).

7       The court thus awards plaintiff statutory damages in the

8  amount of $1,000.00 pursuant to California Civil Code § 1788.17,

9  for the same reasons as set forth above.

10 **C.   Emotional Distress Damages Under the FDCPA and RFDCPA**

11      Defendant moves for summary judgment as to plaintiff's claim

12 for emotional distress damages pursuant to the FDCPA and RFDCPA,

13 arguing plaintiff cannot establish the requisite elements for a

14 state law claim of intentional infliction of emotional distress

15 ("IIED"), and thus, she cannot maintain a claim for emotional

16 distress damages under the statutes.  (Def.'s Mot. at 6).

17 Plaintiff opposes defendant's motion, arguing that a plaintiff

18 need not prove the elements of a claim for IIED under state law

19 to recover emotional distress damages pursuant to the FDCPA and

20 RFDCPA, and that under the applicable lower threshold for such

21 claims, plaintiff can survive summary judgment.  (Pl.'s Opp'n at

22 8).

23      Under the FDCPA and RFDCPA, plaintiff may recover in

24 addition to statutory damages, actual damages, including damages

25 for emotional distress, sustained as a result of defendant's

26 conduct in violation of the statutes.  15 U.S.C. §1692k(a)(1);

27 Cal. Civ. Code § 1788.17.  Here, plaintiff does not claim any

28 out-of-pocket losses or other actual damages, except damages for

1  alleged emotional distress she sustained as a result of
2  defendant's conduct.

3      District courts are split over whether a plaintiff's claims
4  for emotional distress damages under the FDCPA are evaluated
5  under the state law governing the tort of IIED or some lower
6  standard.[8]  Under the latter approach, courts have concluded that
7  an FDCPA plaintiff does not need to meet state law standards for
8  IIED in order to recover emotional distress damages for an FDCPA
9  violation.  See e.g., Panahiasl v. Gurney, 2007 WL 738642 at *1
10 (N.D. Cal. March 8, 2007); see also Foster v. D.B.S. Collection
11 Agency, 2006 WL 3491867 (S.D. Ohio Dec. 5, 2006); McGrady v.
12 Nissan Motor Acceptance Corp., 40 F. Supp. 2d 1323, 1338-39 (M.D.
13 Ala. 1998).  Under this approach, courts instead have analogized
14 the FDCPA to the Fair Credit Reporting Act ("FCRA").  Panahiasl,
15 2007 WL 738642 at *1-2.  "Under the FDRA, a statutory scheme very
16 similar to the FDCPA, a plaintiff who proves a violation of the
17 [A]ct is entitled to actual damages for emotional distress
18 arising from the violation, without first having to prove a right
19 of action under state law."  Id. at *2.  Applying this rational,
20 courts hold that when a violation of the FDCPA has been
21 established, actual damages for emotional distress can be proven
22 independently of state law requirements; a plaintiff need not
23 prove state law tort elements to be compensated for their
24 emotional distress.  Id.  However, a plaintiff must demonstrate
25 more than transitory symptoms of emotional distress and
26 unsupported self-serving testimony by a plaintiff is not

27

28      [8]  The Ninth Circuit has not ruled on this issue.

1   sufficient.  <u>Wantz v. Experian Info. Systems</u>, 386 F.3d 829, 834

2   (7th Cir. 2004); <u>Cousin v. Trans Union Co.</u>, 246 F.3d 359, 371

3   (5th Cir. 2001).

4        Alternatively, other courts require a plaintiff to prove a

5   claim for IIED under state law in order to collect damages for

6   emotional distress.  <u>See</u> <u>Pflueger v. Auto Finance Group, Inc.</u>,

7   1999 WL 33738434 at *4 (C.D. Cal. 1999); <u>cf.</u> <u>Carrigan v. Central</u>

8   <u>Adjustment Bureau, Inc.</u>, 502 F. Supp. 468, 470-71 (N.D. Ga. 1980)

9   (holding plaintiff's claim for intentional infliction of mental

10  distress arising from violations of the FDCPA met state

11  requirements under Georgia tort law); <u>Venes v. Professional</u>

12  <u>Service Bureau, Inc.</u>, 353 N.W.2d 671, 674-75 (Minn. Ct. App.

13  1984) (finding plaintiff satisfied state elements of IIED and

14  could thus recover emotional distress damages).  Under California

15  law, to prove a claim for IIED a plaintiff must show: (1) extreme

16  and outrageous conduct by the defendant; (2) with intent to cause

17  plaintiff emotional distress; (3) severe emotional distress

18  suffered by plaintiff; and (4) defendant's conduct actually and

19  proximately caused plaintiff's severe emotional distress.  <u>See</u>

20  <u>Davidson v. City of Westminster</u>, 32 Cal. 3d 197, 209 (1982)

21  (enumerating elements of IIED under California law); <u>see</u> <u>also</u>

22  <u>Pflueger</u>, 1999 WL 33738434 at *4 (listing elements of IIED

23  plaintiff must prove to succeed in claims arising under FDCPA and

24  RFDCPA).

25       This court finds persuasive those cases requiring a

26  plaintiff to establish the elements of a claim for IIED under

27  state law in order to sustain a claim for emotional distress

28  damages under the FDCPA and RFDCPA.  First, Section 1692 *et seq.*

contains no indication Congress intended to create a more lenient IIED standard in enacting the FCDPA.  Moreover, the FDCPA expressly requires to recover above and beyond statutory damages, *definable actual* damages.  15 U.S.C. § 1692k(a)(1).  There must be some standards to adjudge those damages, and the court finds that the standards for a state IIED claim serve that purpose well as they ensure that the alleged damages are real and quantifiable.

Here, plaintiff cannot establish the requisite elements of a claim for IIED.  Indeed, plaintiff does not discuss application of the facts to the state law standard for IIED in her opposition; on that basis alone, the court could grant the motion in defendant's favor.  However, the court nonetheless discusses its findings.

The subject conduct does not rise to the level of "extreme and outrageous" conduct as a matter of law.  At most, plaintiff alleges conduct that was rude and impolite; significantly, the conduct occurred in only two voice mail messages and four brief conversations taking place on *one* afternoon.  Such conduct is not actionable as an IIED claim.  <u>Cole v. Fair Oaks Fire Prot. Dist.</u>, 43 Cal.3d 148, 155 (1987) ("Mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" are not actionable as "outrageous conduct").  Moreover, specifically in collection cases, courts have long recognized that the very nature of collection efforts often cause a debtor to suffer emotional distress.  <u>See</u> <u>Bowden v. Spiegel</u>, 96 Cal. App. 2d 793, 789 (1950).  To be actionable as an IIED claim, however, the conduct must go beyond "all reasonable bounds of decency."  <u>Id.</u>;

1 see also Ross v. Creel Publishing, 100 Cal. App. 4th 736, 746-47

2 (2003).  The conduct here simply does not meet this threshold.

3      Additionally, the court notes that in this case, *plaintiff*

4 initiated the bulk of the conduct with defendant by continuing to

5 call Elizabeth back after Elizabeth hung up on plaintiff several

6 times.  This is not a case in which the debt collector repeatedly

7 called and harassed a plaintiff despite being asked not to call.

8 Here, plaintiff could have chosen to stop the contact altogether

9 but did not do so.

10      Furthermore, plaintiff cannot demonstrate she suffered

11 "extreme emotional distress."  Plaintiff claims only that she was

12 upset and angry at the time, that her hands shake and are sweaty

13 when she now receives calls from unknown persons, and that she

14 has occasional trouble sleeping to date; she has not, however,

15 seen any medical professionals as a result of her alleged

16 aliments and does take any medications, prescription or over-the-

17 counter.  Such symptoms are not sufficient to demonstrate extreme

18 distress.  Girard v. Ball, 125 Cal. App. 3d 722, 787-788 (1981).

19 In Girard, the plaintiff claimed emotional distress after a debt

20 collector attempted to collect on a debt against him by making

21 phone calls and sending collection letters.  The plaintiff

22 claimed he "couldn't sleep" and suffered from "anxiety symptoms"

23 and nervousness, but he sought no treatment for his condition.

24 Id.  Although subsequently the debtor claimed more extensive

25 symptoms, the court held that emotional distress damages could

26 not be sought for such "trivial" and "transitory" claims.  Id.

27 Such is also the case here.

28

1    Finally, even were the court to consider plaintiff's claims

2   under a lower standard, neither the messages alone nor the

3   entirety of plaintiff's conversations with defendant rises to the

4   level necessary for plaintiff to recover emotional distress

5   damages.  Even those courts that have concluded that an FDCPA

6   plaintiff need not meet state law standards for IIED, nonetheless

7   require more than transitory symptoms of emotional distress for a

8   plaintiff to recover damages.  See Wantz, 386 F.3d at 834;

9   Cousin, 246 F.3d at 371.  For example, in Wantz, the court

10   illustrated the types of "conclusory allegations" that do not

11   permit emotional distress damages under the FDCPA:

> Wantz's only evidence as to emotional distress was his
> testimony that: (1) he was 'humiliated and embarrassed'
> every time he was rejected for credit;' (2) it is
> 'mentally and emotionally distressful when dealing with
> credit reporting agencies;' and (3) it is 'embarrassing
> to go somewhere and have them check your credit report and
> see all that stuff on there' . . . Without further evidence
> to buttress those assertions, Wantz's case [can] not go
> forward.

17   386 F.3d at 834.  Similarly, in Cousin, the court described the

18   types of evidence necessary to support a claim for emotional

19   distress damages, stating that a plaintiff alleging intangible

20   loss must set forth evidence with specificity which includes

21   "corroborating testimony or medical or psychological evidence in

22   support of the damage award."  246 F.3d at 371 (emphasis added);

23   see accord Dawson v. Washington Mutual Bank, 390 F.3d 1139, 1149-

24   50 (9th Cir. 2004) (noting "[n]on-experts, such as family

25   members, friends, or co-workers, may testify to manifestations of

26   mental anguish and clearly establish that significant emotional

27   harm occurred").

28

1      Here, the only evidence of plaintiff's emotional distress is

2   her own testimony, and this evidence demonstrates that her

3   alleged emotional distress was transitory in nature and of the

4   type not recoverable under the FDCPA.  While plaintiff is correct

5   that she is not required to present expert testimony in support

6   of her claim, <u>Zhang v. American Gem Seafoods</u>, 339 F.3d 1020, 1040

7   (9th Cir. 2003) (upholding emotional distress damages based only

8   on testimony), she fails to acknowledge that she cannot rely

9   solely on her uncorroborated testimony to establish emotional

10  distress.  <u>Wantz</u>, 386 F.3d at 834; <u>Cousin</u>, 246 F.3d at 371.

11  Indeed, she has no corroborating evidence--no witnesses to

12  confirm her symptoms and no documentary evidence to support her

13  claims.  Without such evidence to buttress her assertions,

14  plaintiff's claims cannot go forward.  <u>Wantz</u>, 386 F.3d at 834.

15      In conclusion, although defendant's representative,

16  Elizabeth, was unnecessarily rude and unkind to plaintiff,

17  plaintiff's claims of stress do not rise to the level necessary

18  to set forth a viable claim for IIED under either state law or

19  any lower threshold established in some case law.  Therefore, for

20  the reasons set forth above, defendant's motion for partial

21  summary judgment with respect to plaintiff's claim for emotional

22  distress damages is GRANTED.

23                          **CONCLUSION**

24      For the foregoing reasons, the court GRANTS plaintiff's

25  motion for partial summary judgment with respect to her claims

26  under 15 U.S.C. § 1692d(6) and 1692e(11) of the FDCPA as well as

27  her corollary claims under the RFDCPA.  The court also GRANTS

28  defendant's motion for partial summary judgment as to plaintiff's

claim for emotional distress damages under the FDCPA and RFDCPA.[9]

    IT IS SO ORDERED.

DATED: December 19, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[9]    The court notes that the instant order does not apparently resolve the entirety of this case.  Both parties moved only for *partial* summary judgment, and the complaint appears to allege other violations of the FDCPA and correspondingly the RFDCPA.  (Compl., filed Oct. 18, 2005, pursuant to order of transfer by the United States District Court for the Northern District of California).